Jason JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–0410–CR–847.

Court of Appeals of Indiana.

Aug. 31, 2005.

Joseph F. Thoms, Thoms & Thoms, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Jason Johnson appeals from his conviction for Resisting Law Enforcement, a Class A misdemeanor.[1] He presents one issue for our review, whether the evidence is sufficient to support the conviction.

We affirm.

The facts as elicited at the trial reveal that on May 29, 2004, Indianapolis Police Officer Jeffrey Viewegh was driving his cruiser southbound on Pershing Avenue when he came upon a line of stopped cars, some of which were honking their horns. Officer Viewegh pulled around the cars and saw that Johnson's car was parked in the road, blocking the southbound lanes of traffic. While parked alongside Johnson's car, Officer Viewegh twice asked Johnson to move his vehicle into a parking spot on the side of the street. After Johnson refused, Officer Viewegh activated the lights on his cruiser, exited the vehicle, and approached Johnson's driver side door. He twice more asked Johnson to move. Johnson refused but stated that he was waiting

---

1. Ind.Code § 35–44–3–3 (Burns Code Ed. Repl.2004).

on his mother. Officer Viewegh asked Johnson to step out of the car, which he did. Johnson was then placed in handcuffs. As he was being walked to the curb, Johnson began to scream and yell at Officer Viewegh. Johnson was placed under arrest, and a transport vehicle was called.

While waiting for the transport vehicle, Johnson requested that he be taken to the hospital by an ambulance because he was bitten by a mosquito. He was told that he would be taken to the hospital by the transport vehicle and that an ambulance would not be called. Indianapolis Public Safety Officer Robert Stockton arrived to transport Johnson. When Officer Stockton attempted to search Johnson, he turned away and pushed away with his shoulders while cursing and yelling. After Johnson was searched, he refused to get into the transport vehicle. Officers Viewegh and Stockton then grabbed him to place him into the vehicle. At that time, he "stiffened up" and the officers had to physically place him inside. Transcript at 17.

In reviewing a challenge to the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of the witnesses. *Kien v. State,* 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied.* We consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that beyond a reasonable doubt the defendant was guilty of the crime charged. *Id.*

Indiana Code § 35–44–3–3(a) states, "A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer ... commits resisting law enforcement, a Class A misdemeanor." Our Supreme Court has interpreted this statute to require that the force element applies to resisting, obstructing, or interfering with a law enforcement officer. *Spangler v. State,* 607 N.E.2d 720, 723 (Ind.1993). The Court then held that "one 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.*

The facts in that case established that the Decatur County Sheriff's Department was attempting to serve a protective order against Spangler by contacting him at his home. When that failed, a deputy called Spangler's place of employment and talked to Spangler on the phone. Spangler told the deputy not to call him at work and hung up. The deputy then took the court order to Spangler's place of employment and spoke to him. Spangler refused to accept the papers and told the deputy not to bother him at work. As Spangler walked away, he was ordered to return by the deputy. Spangler did not comply but once again said he would not be served at work. After Spangler walked to the back of the building, the deputy had another employee tell Spangler to return to the counter where the deputy waited. Spangler complied but refused service of the papers. As Spangler walked away, he was warned to not walk away. He then told the deputy to arrest him or let him work. Spangler was arrested for disorderly conduct and the charge of resisting law enforcement was later added.

In analyzing the facts of the case, the Court concluded that the record did not disclose any evidence from which a reasonable trier of fact could determine that

Spangler acted forcibly, at least with respect to how the Court defined it. *Id.* at 724. Spangler did not direct any strength, power, or violence toward the police officer. *Id.* He did not make any movement or threatening gesture in the direction of the officer. *Id.* Rather, he just repeatedly and firmly refused to accept service of process and walked away. *Id.* Thus, there was no evidence by which it could be concluded that Spangler's actions were forcible. *Id.* at 724–25.

This court, in applying that definition of "forcibly" in *Ajabu v. State,* 704 N.E.2d 494, 495–96 (Ind.Ct.App.1998), concluded that an individual did not forcibly resist when he attempted to prevent a police officer from taking a flag from him by "twisting and turning 'a little bit.'" However, in *Wellman v. State,* 703 N.E.2d 1061, 1064 (Ind.Ct.App.1998), this court concluded that an individual forcibly resisted the actions of a law enforcement officer by placing his hands against a door frame to hold himself inside his house after he was told he was under arrest. Because of Wellman's actions, an officer had to push him through the door and then lift him from the ground when he refused to get up and walk.

In *Guthrie v. State,* 720 N.E.2d 7 (Ind. Ct.App.1999), *trans. denied,* this court was again called upon to determine whether an individual resisted a law enforcement officer for purpose of conviction under I.C. § 35–44–3–3(a)(1). The facts reveal that Park Ranger Robert Turner was dispatched to an area of Broad Ripple Park to investigate a person vending without a license. Park Ranger Turner found Guthrie sitting on a blanket with several items for sale. Upon determining that Guthrie did not have a vending permit, he was ordered to stop vending but was told he was free to remain in the park. Guthrie packed his wares but asked to see the ordinance prohibiting his actions. Park Ranger Turner's supervisor was summoned and brought a copy of the ordinance. After some discussion, Park Ranger Turner's supervisor requested that he issue a citation to Guthrie. Park Ranger Turner asked Guthrie his name, but he refused to provide it three times, upon which Guthrie was arrested and transported to the Marion County lockup.

Upon arrival at the lockup, Guthrie was asked to step out of the vehicle, but refused, asserting that his arrest was illegal. Two officers then physically removed Guthrie from the vehicle and placed him on the ground. They requested that Guthrie stand, but he refused. Guthrie was lifted to his feet but refused to walk. He then leaned back and kept his legs straight, requiring the officers to carry him to the receiving area.

After examining I.C. § 35–44–3–3 and *Spangler,* the *Guthrie* court differentiated Guthrie's actions from those of the defendant in *Spangler* by concluding that "Guthrie did more than passively resist." 720 N.E.2d at 9. The court summed up the events in *Guthrie* by noting that the officers had to physically remove Guthrie from a transport vehicle, lift him to his feet, and carry him after he leaned back and stiffened his legs. Essentially, Guthrie did not turn and just walk away as the defendant had in *Spangler,* which was passive resistance. Instead, he applied some "force" such that the officers had to exert force to counteract Guthrie's acts in resistance.

There is little difference between the actions of Guthrie and those of Johnson in this case. Johnson used physical means to resist the officers by turning away and pushing away with his shoulders as they attempted to search him. *But see Ajabu,* 704 N.E.2d at 495–96. More importantly, after refusing to get into the transport

vehicle, he "stiffened up," requiring that the officers exert force to place him inside the transport vehicle.

We recognize that our decision, and even that in *Guthrie* upon which we have relied, may have moderated the definition of "forcibly resist" as it was written in *Spangler.* Indeed, Johnson claims, and it is apparently true, that he did not threaten the officers, lunge at them, or act "violently" toward them. Clearly our jurisprudence has not read "violent" to mean that which is thought of in common parlance. Were that definition to be applied, only those individuals who commit acts such as striking, kicking, or biting police officers could be guilty of resisting law enforcement. However, we have not found any case in which our Supreme Court has addressed with detail the definition it crafted in *Spangler.* That being said, our Supreme Court has made one statement which could be interpreted to alter the definition as it appeared to have been written in *Spangler.*

In *Price v. State,* 622 N.E.2d 954 (Ind. 1993), the Court mentioned Indiana Code § 35–44–3–3 when discussing political expression and noted that an individual could be charged with a violation of that statute if the person's behavior was construed to be resisting, obstructing, or interfering with a law enforcement officer. The Court specifically stated, "Moreover, an individual who directs strength, power *or* violence towards police officers or who makes a threatening gesture or movement in their direction, may properly be charged with violation of Ind.Code Ann. § 35–44–3–3." *Id.* at 963 n. 14 (emphasis supplied). Whether the Court intended this statement to indicate that *Spangler* actually meant that an individual could be guilty of resisting law enforcement without the State having to prove that the individual's actions are violent is unclear. But until we are instructed otherwise by our Supreme Court, we see no reason to apply what appears to be an overly strict definition of "forcibly resist" when the facts in *Spangler* established that an individual did no more than passively resist by walking away, facts that hardly necessitated defining "force" to include strong, powerful, *and* violent means.

The judgment is affirmed.

NAJAM, J., and RILEY, J., concur.